UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

J. Patrick Gavin, a/k/a John P. Gavin,                    Civil No. 04-4522 (PAM/JSM)
also doing business as SEC Insight, Inc.,

                              Plaintiff,

v.                                                        **MEMORANDUM AND ORDER**

United States Securities and Exchange
Commission,

                              Defendant.

_____

This matter is before the Court on the following Motions: a second renewed Motion for Summary Judgment and Attorneys' Fees filed by Plaintiff J. Patrick Gavin, a renewed Motion for Sanctions and Attorneys' Fees filed by Gavin, and a second renewed Motion for Summary Judgment filed by Defendant United States Securities and Exchange Commission (SEC).  For the reasons that follow, the Court grants the SEC's Motion and denies both of Gavin's Motions.

**BACKGROUND**

This case arises from allegations that the SEC improperly withheld agency records. In the Complaint, Gavin claimed that the SEC wrongly denied twenty-six requests he made under the Freedom of Information Act (FOIA).  Specifically, he alleged that the SEC inappropriately used a Glomar response[1] and improperly withheld records under Exemption 7(A) of FOIA, 5 U.S.C. § 552(b)(7)(A).

_____

[1]  A Glomar response is one in which the agency refuses "to confirm or deny the existence of materials requested under the FOIA." Phillippi v. CIA, 546 F.2d 1009, 1012 (D.C. Cir. 1976).

This is the third time the parties have filed cross-motions for summary judgment. Both parties first moved for summary judgment in 2005.  In his initial motion, Gavin challenged the Glomar responses and categorical approach of classifying withheld documents.  He contended that the SEC urged the Court to order the release of the requested documents and to bar the SEC from further using the Glomar response to his requests.  In its initial motion, the SEC withdrew its Glomar responses and invoked Exemption 7(A) to withhold records relating to ongoing SEC investigations.[2]  It also argued that Gavin must resubmit his FOIA requests relating to these investigations because documents possibly were available.

On October 24, 2005, the Court denied Gavin's motion and granted in part and denied in part the SEC's motion.  Specifically, the Court ruled that the SEC could use a categorical approach to withhold documents under Exemption 7(A).  However, the Court required the SEC to review each document for categorization and segregation purposes. The Court therefore ordered the SEC to submit affidavits relating to its ongoing investigations, attesting that it had conducted a document-by-document review and addressing whether withheld documents contained reasonably segregable, non-exempt information.  The Court also remanded ten requests for reprocessing.[3]

---

[2]  The SEC also submitted a declaration relating to Count 4 in which it previously asserted a Glomar response.  The declaration confirmed that the SEC possessed no relevant documents relating to that request.

[3]  The Court dismissed Count 4 because the SEC established that it had no records responsive to Gavin's request for information.  See supra note 2.

Thereafter, both parties filed renewed summary judgment motions.[4]  On October 16, 2006, the Court granted in part and denied in part the SEC's motion and denied Gavin's motion.  Specifically, the Court granted the SEC summary judgment on Counts 1, 7, 13, and 22, which related to requests for which the SEC relied on Exemption 7(A) and had conducted a document-by-document review.   The Court denied summary judgment on Counts 11, 14, 15, 23, and 26, which related to requests for which the SEC continued to rely on Exemption 7(A) but had not conducted a document-by-document review.   However, the Court also ruled that Gavin had to pay for the document-by-document review.  Therefore, the Court ordered the parties to confer about review costs and the scope of the requests.  The Court directed the SEC to conduct the review within ninety days of receiving Gavin's payment.  Finally, for the remainder of the requests, which had been remanded for reprocessing, the Court ordered the SEC to file a Vaughn index by November 16, 2006.[5]

Thereafter, Gavin narrowed his requests regarding the open investigations and agreed to pay for the review of documents responsive to his requests.  The SEC timely

---

[4]  Gavin also filed a motion for sanctions and attorneys' fees, but the Court deferred ruling on that motion.

[5]  A Vaughn index is a submission including detailed affidavits or declarations identifying the records in question and explaining why the records were withheld.  See Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973); see also In re DOJ, 999 F.2d 1302, 1314 (8th Cir. 1993) (explaining the two-fold purpose of a Vaughn index: to ensure that the right to information "is not submerged beneath governmental obfuscation and mischaracterization" and to allow courts to evaluate effectively and efficiently the factual nature of disputed information).

filed a <u>Vaughn</u> index.  In January 2007, the SEC provided Gavin more a detailed <u>Vaughn</u> index.

Requests relating to twenty-one counts of the Complaint remain at issue.  The requests can be grouped into two groups.  The first includes requests for which the SEC continues to rely on Exemption 7(A) and has conducted a document-by-document review of responsive documents.  The SEC has submitted declarations attesting that SEC staff conducted a document-by-document review of these documents to determine whether the documents fell within the categories previously identified and whether the documents contained any reasonably segregable, non-exempt information.  The second group includes requests for which the SEC no longer relies on Exemption 7(A) and have been remanded for reprocessing.  The SEC has released documents relating to these requests, but now relies on other exemptions to withhold some information.

**DISCUSSION**

**A.    Summary Judgment Standard of Review**

In a FOIA case, the standards articulated in Federal Rule of Civil Procedure 56 apply.  <u>See</u> <u>Miller v. U.S. Dep't of Agric.</u>, 13 F.3d 260, 262 (8th Cir. 1993).  Thus, summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material fact.  <u>See id.</u>; <u>see also</u> Fed. R. Civ. P. 56.  "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the

FOIA requester." Miller, 13 F.3d at 262 (quoting Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985)).

The Court reviews an agency denial of a FOIA request de novo. 5 U.S.C. § 552(a)(4)(B). An agency may withhold information that falls within one of the exemptions identified in 5 U.S.C. § 552(b) but must provide any reasonably segregable portion of a record after exempt portions are redacted. 5 U.S.C. § 552(a)-(b). Exemptions should be construed narrowly. Miller, 13 F.3d at 262.

When an agency denies a FOIA request, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). An agency may meet its burden by "submitting affidavits and other evidence to the court to show that the documents are properly classified and thus clearly exempt from disclosure." Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1386 (D.C. Cir. 1979); see also Barney v. IRS, 618 F.2d 1268, 1272 (8th Cir. 1980).

> A court's primary role . . . is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position. . . . If the Government fairly describes the content of the material withheld and adequately states its ground for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

Barney, 618 F.2d at 1272 (quoting Cox v. DOJ, 576 F.2d 1302, 1312 (8th Cir. 1978)); see also Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method

of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.")).

If the Court cannot evaluate the propriety of the claimed exemptions on the record before it, it may order the agency to submit more detailed affidavits or a <u>Vaughn</u> index, or review documents <u>in camera</u>. <u>See</u> <u>Barney</u>, 618 F.2d at 1272; <u>Maricopa Audubon Soc. v. U.S. Forest Serv.</u>, 108 F.3d 1089, 1093 n.2 (9th Cir. 1997); <u>see also</u> <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 224 (1978) ("<u>in camera</u> review . . . is designed to be invoked when the issue before the District Court could not be otherwise resolved"). Ultimately, if the agency does not adequately support its decision to withhold the information, the Court must release the records. <u>Cox</u>, 576 F.2d at 1312.

## B.    Ongoing Investigations

The SEC continues to rely on Exemption 7(A) to withhold records sought in Counts 11, 23, and 26 of the Complaint.[6]  Exemption 7(A) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [] could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A); <u>see also</u> <u>In re DOJ</u>, 999 F.3d 1302, 1307 (8th Cir. 1993); <u>Barney</u>, 618 F.2d at 1272-73.  The agency "is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement

---

[6]  Count 11 requests documents relating to an investigation of Cablevision Systems Corporation.  Count 23 requests documents relating to an investigation of Interpublic Group of Companies.  Count 26 requests documents relating to an investigation of Citigroup, Inc. The SEC has contended consistently that ongoing investigations of Dynegy and Enron Corporation include documents that fall within the request relating to Citigroup, Inc.

proceeding." Barney, 618 F.2d at 1273. Rather, the Court focuses on "the particular categories of documents, and the likelihood that the release of documents within those categories could reasonably be expected to threaten enforcement proceedings." In re DOJ, 999 F.2d at 1309. Proper utilization of the categorical approach requires the SEC to: (1) define functional categories of documents, (2) conduct a document-by-document review to assign documents to proper categories, and (3) explain to the Court how the release of each category would interfere with enforcement proceedings. See id.

The SEC claims that the withheld records were compiled to investigate possible federal securities law violations, and that their disclosure would impede enforcement proceedings. Initially, the SEC divided the requested documents into five functional categories: (1) documents produced by third parties, (2) SEC correspondence with potential witnesses, (3) testimony transcripts, (4) attorney notes and trial preparation materials, and (5) memoranda by SEC staff. The Court previously approved of this categorization, finding that the declarations submitted by SEC attorneys provided sufficient information to show a rational link between the categories and alleged likely interference. (Oct. 22, 2005 Order at 7-8.) However, because the declarations did not attest that the SEC attorneys completed document-by-document reviews when categorizing the records, the Court denied summary judgment. (Id.)

On April 2, 2007, the SEC filed supplemental declarations relating to investigations at issue in Counts 11, 23, and 26. In the supplemental declarations, the SEC attorneys aver that they performed a document-by-document review of the withheld investigatory documents. (See Mar. 23, 2007 Herm Decl. ¶ 4; Mar. 28, 2007 Finkel Decl.

¶ 4; Mar. 28, 2007 Galloway Decl. ¶ 4; Mar. 29, 2007 Silverstein Decl. ¶ 4; Mar. 30, 2007 Gresenz Decl. ¶ 4.)   In addition, most attorneys aver that all the withheld investigatory documents fit into the categories identified in their prior declarations.  (See Mar. 23, 2007 Herm Decl. ¶ 5; Mar. 28, 2007 Galloway Decl. ¶ 5; Mar. 29, 2007 Silverstein Decl. ¶ 5; Mar. 30, 2007 Gresenz Decl. ¶ 5.)   The only exception is that an attorney involved in the Interpublic Group of Companies investigation avers that all withheld investigatory documents fit either into the categories identified in his prior declaration or into a new category: correspondence with other government agencies. (Mar. 28, 2007 Finkel Decl. ¶ 5.)  He further explains how the correspondence with other government agencies was compiled for law enforcement purposes and how disclosing the correspondence likely would interfere with ongoing enforcement proceedings.  (Id.)

All supplemental declarations also address whether the reviewed documents contain any reasonably segregable, non-exempt information.  Attorneys involved in three investigations averred that the documents responsive to Gavin's requests contain no reasonably segregable, non-exempt information.  (Mar. 23, 2007 Herm Decl. ¶ 6; Mar. 29, 2007 Silverstein Decl. ¶ 6; Mar. 30, 2007 Gresenz Decl. ¶ 6.)  Attorneys involved in the two other open investigations discovered documents that contain reasonably segregable, non-exempt information.  (Mar. 28, 2007 Finkel Decl. ¶ 6; Mar. 28, 2007 Galloway Decl. ¶ 6.)

Gavin lodges several attacks relating to the ongoing investigations.  First, he contends that the affidavits are too conclusory.  To the contrary, the initial and supplemental declarations of the SEC attorneys specifically explain how the release of

documents in each functional category will interfere with pending law enforcement proceedings, that the document-by-document review revealed that each document fell within a functional category identified in the declarations, and either that no document contained information that could be segregated and released without risking interference with ongoing enforcement proceedings or that reasonably segregable, non-exempt information existed and would be released.   Thus, the initial and supplemental declarations satisfy the requirements for withholding the records under Exemption 7(A).

Second, Gavin asserts that the SEC failed to submit declarations for investigations intertwined with the investigation of Citigroup, Inc.   The record belies this contention. (See Mar. 14, 2005 Silverstein Decl.; Mar. 29, 2007 Silverstein Decl.; Mar. 28, 2007 Galloway Decl.; Mar. 30, 2007 Gresenz Decl.)   Thus, Gavin's argument on this point fails.

Third, Gavin asks the Court to order the SEC to release all formal orders of investigation, Wells notices,[7] and subpoenas from the ongoing investigations.   He insists that none of these documents contains any information that could harm the investigations. However, the Court previously approved the functional categorization the SEC used in reviewing the documents, finding sufficient information to show a rational link between categories of records involved and likely interference with enforcement proceedings. (Oct. 22, 2005 Order at 7-8.)   Moreover, the supplemental declarations specifically state

---

[7] A Wells notice apprises the recipient of charges that the SEC intends to bring and affords the recipient the opportunity to submit a written statement.  Riel v. Morgan Stanley, No. 06-524, 2007 WL 541955, at *3 (S.D.N.Y. Feb. 16, 2007).

that, except for the few documents that contain reasonably segregable, non-exempt information,[8] releasing the documents could harm the ongoing investigations.  The Court therefore rejects Gavin's argument on this point.

The SEC has satisfied all requirements for withholding records under Exemption 7(A) and has identified records that contain reasonably segregable, non-exempt information.[9]  The Court therefore grants the SEC summary judgment on Counts 11, 23, and 26.

---

[8] After redacting material exempt from disclosure, the SEC released to Gavin non-exempt portions of formal orders.

[9] Gavin raised another point in his initial memorandum supporting his summary judgment motion: that the SEC had not released documents identified as containing reasonably segregable information. The SEC responded that it contacted Gavin's counsel in April 2007 to inquire whether the SEC should release the segregable information.  Gavin's counsel responded in July 2007, advising the SEC that she wanted an estimate of the review cost to allow Gavin to determine how to proceed. In August 2007, she specifically identified the documents Gavin sought.  Thus, it appears the parties have resolved this issue.  If the SEC has not yet released the requested records containing the segregable, non-exempt information, it must do so within ten days of this Order.

**C.      Remanded Requests**

In its October 24, 2005 Order, the Court remanded for reprocessing ten requests related to closed investigations.[10]   On December 30, 2005, the SEC informed the Court that four additional investigations had concluded, and the SEC remanded those requests for reprocessing.[11]   On July 7, 2006, the SEC informed the Court that two additional investigations subsequently had closed, and the SEC remanded those requests as well.[12] The SEC now informs the Court that Exemption 7(A) no longer applies to two additional investigations, and the SEC also remanded those requests.[13]

The Court previously ordered the SEC to submit a Vaughn index for the remanded requests by November 15, 2006.  The SEC complied.  It supplemented the Vaughn index on June 5, 2007, when it filed its second renewed summary judgment motion.[14]   The Vaughn index identifies each document that the SEC either completely or partially

---

[10]   These requests pertain to Counts 2, 3, 5, 6 (the Exemption 7(A) portion), 8, 9, 10, 17, 19, and 20 of the Complaint.  These requests consist of seven requests for which the SEC no longer relies on Exemption 7(A) and three requests for which the SEC no longer claims a Glomar response.

[11]   These investigations relate to Counts 12, 16, 21, and 24.

[12]   These investigations relate to Counts 18 and 25.

[13] These investigations relate to Counts 14 and 15.  In his summary judgment motion, Gavin submits that the SEC failed to release the documents.  He therefore asks the Court to order the release of all documents relating to Counts 14 and 15.  However, the SEC released the documents in June 2007, with redactions of staff names, third-party names, and identifiers under Exemption 7(C).  As explained below, the Court approves of these redactions.  Thus, Gavin's argument on this point is moot.

[14]   Gavin urges the Court not to consider the supplemental index because it is untimely. However, the SEC timely filed its initial Vaughn index.  Thereafter, the parties conferred to resolve Gavin's objections to the initial index.  The revised Vaughn index provides more details as to what and why information was withheld.  Deciding the motions based on a more complete Vaughn index and record is appropriate.

withheld, describes the withheld information, and identifies the exemption asserted.   In addition, the SEC submitted declarations that detail how each exemption identified in the <u>Vaughn</u> index applies.   The parties now dispute whether the SEC has met its burden of showing how each exemption applies.

1.    Exemption 2

The SEC relies on Exemption 2 to redact internal information used to administer and manage its investigations and to withhold online complaint forms and e-mail exchanges.  Exemption 2 covers matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  To rely on the exemption, an agency must make a threshold showing that the materials are predominantly internal and relate to trivial, administrative matters of no genuine public interest.  Sussman v. U.S. Marshals Serv., ___ F.3d ___, 2007 WL 2176117, at *4 (D.C. Cir. 2007) (citing Schwaner v. Dep't of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990)).

The Assistant Chief Counsel in the Division of Enforcement for the SEC explains that the redacted information includes administrative information such as case names and numbers; dates investigations were opened and closed; dates of recommendations and reports; checklists; internal classification codes and keywords; and staff names, telephone numbers, and assignment dates.  (Hall Decl. ¶¶ 5, 10, 12, 14, 17, 19, 21, 26, 34, 43.)  He describes the withheld documents as online complaint forms that SEC staff reviewed to determine whether the SEC should investigate particular entities, as well as internal e-mail exchanges identifying potential financial irregularities and outstanding FOIA requests in four investigations.  (Id. ¶¶ 40-42.)

The redacted information clearly falls within the scope of Exemption 2.  The information is used to facilitate the administration and management of SEC investigation and provides no insight on substantive contents of the investigations.  Nonetheless, Gavin

contends that there is a substantial public interest in knowing staff assignment dates. The Court disagrees. Revealing staff assignment dates will not expose how the SEC used its resources. Merely knowing that a particular staff member was assigned to an investigation provides no indication as to what the staff member did on the investigation or how much time was devoted to the investigation. The redacted information is purely trivial, administrative information to which Exemption 2 applies. The Court therefore grants summary judgment as it relates to the redacted information withheld under Exemption 2.

The withheld documents are a different matter, however. The supporting declaration establishes that the documents are internal. However, the Court cannot discern whether the documents contain purely trivial, administrative information. Thus, the Court rejects the SEC's reliance on Exemption 2 to withhold the online complaint forms and e-mail exchanges.[15]

2.    Exemption 4

The SEC relies on Exemption 4 to withhold five documents that purportedly contain confidential commercial or financial information. Of the documents withheld by the SEC, one was submitted pursuant to a subpoena and the others were submitted voluntarily. Exemption 4 of the FOIA prohibits public disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). When analyzing the applicability of Exemption 4,

---

[15] However, as explained below, the Court finds that the documents are covered by the deliberative process privilege and therefore may be withheld under Exemption 5.

courts distinguish between information submitted to the agency under compulsion and information provided to the agency voluntarily.  Contract Freighters, Inc. v. Sec'y of U.S. Dep't of Transp., 260 F.3d 858, 861-62 (8th Cir. 2001).  When the agency compels the submission, it may not disclose the information if "disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  Id. at 861 (quoting Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)).   If information is provided voluntarily to the agency, the agency must withhold the information if "it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  Id. at 862 (quoting Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992)).

The document that eFunds Corporation produced pursuant to a subpoena is a data purchase agreement.   The General Counsel and Secretary of eFunds submitted a declaration requesting that the agreement remain confidential.  Gavin contends that the declaration is too conclusory and fails to identify any specific harm.  To the contrary, the declaration explains that the agreement contains "detailed information regarding eFunds' proprietary debit data, as well as details regarding the fees and software licenses negotiated between the parties for sale of this data."  (Coleman Decl. ¶ 6.)   The declaration further specifies how eFunds would suffer substantial competitive harm if the information was released:

> By disclosing the agreement to the public, the SEC would also disclose eFunds' selling price for its debit data, payment details, and other negotiated terms of the agreement.  The disclosure of this confidential information could adversely affect eFunds' competitive position in subsequent transactions.  eFunds' partners and competitors could use this information to undermine eFunds' competitive position in the debit data marketplace.

(Id. ¶ 7.)  The declaration sufficiently details the substantial harm eFunds would suffer if the SEC disclosed the agreement.  The SEC properly invoked Exemption 4 to withhold the agreement.

The SEC withheld documents that were provided voluntarily from two sources: the Market Surveillance Division of the New York Stock Exchange (NYSE) and Orthodontic Centers of America.  The head of the NYSE Marketing Trading Analysis Department avers that the NYSE deems its documents "to be highly confidential in their entirety." (Bryngil Decl. ¶ 3.)  She explains that "these materials contain confidential and sensitive surveillance information, and disclose methods by which NYSE surveils or investigates anomalous trading."   (Id. ¶ 4.)   In addition, she explains the documents "contain confidential financial data of private parties and/or sensitive surveillance data whose disclosure may significantly impair the effectiveness of NYSE self-regulatory practices and its obligations, under federal law to enforce compliance with applicable rules and regulations by persons and/or entities subject to its jurisdiction."  (Id.)

The remaining documents are letters that counsel prepared for Orthodontic Centers of America.   The documents relate to its business and operations and "constitute commercial and financial information that is confidential . . . and is not of the kind that

would be ordinarily released by the company to the public." (Centola Decl. ¶ 1.) In particular, the documents contain "specific amounts, dates and values on a name-by-name basis regarding securities issued by the company in connection with privately and individually negotiated transactions with orthodontists affiliated with the company," as well as "sensitive commercial and financial aspects of a privately and individually negotiated contractual arrangement . . . and . . . the specific terms of the parties' financial relationship." (Id. ¶ 2.)

These declarations clearly explain that the information contained in the documents consists of confidential commercial or financial information and that the companies do not customarily release the information to the public. The SEC properly withheld the voluntarily provided documents pursuant to Exemption 4.

3.   Exemption 5

The SEC relies on Exemption 5 to withhold documents purportedly covered by evidentiary privileges. Exemption 5 permits nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption allows an agency to withhold materials that would be privileged from discovery in civil litigation, such as those shielded by the attorney-client privilege, the work product doctrine, and the deliberative process privilege. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Tax Analysts v. IRS, 294 F.3d 71, 76 (D.C. Cir. 2002) (citation omitted).

a.   Attorney-Client Privilege

The SEC relies on the attorney-client privilege to withhold one request-for-action form and three internal memoranda. The Assistant Chief Counsel in the Division of Enforcement for the SEC avers that the memoranda contain attorney recommendations, identify potential securities law violations, and provide legal advice as to whether the SEC should take action. (Hall Decl. ¶ 35.) These documents fall within the attorney-client privilege and therefore fall within Exemption 5.

       b.     Work Product Doctrine

The SEC relies on the work product doctrine to withhold several types of documents: case opening reports, case closing reports, matter-under-inquiry summaries, investigation summaries, access reports, internal memoranda, and attorney research and notes.

The attorney work product doctrine protects "the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 146 (2d Cir. 1994) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). Although factual information falling within the scope of attorney work product generally is discovered upon a showing of "substantial need" under Federal Rule of Civil Procedure 26(b)(3), under Exemption 5 the test is whether information "would 'routinely be disclosed' in private litigation." Id. (quoting Sears, Roebuck & Co., 421 U.S. at 149 n.16). Thus, to rely on the work product doctrine, an agency must show that the

document was "prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (citation omitted).

> An agency may meet this standard by demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind.  Such an investigation would have to be, and typically would be, based upon a suspicion of specific wrongdoing and represent an attempt to garner evidence and to build a case against the suspected wrongdoer.  The existence of an active investigation, therefore, is strong circumstantial evidence that the agency lawyer prepared the document with future "litigation in mind."

Id.; see also A. Michael's Piano, Inc., 18 F.3d at 146 ("courts have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'") (citation omitted).

In this case, SEC attorneys prepared the documents in question in the course of active investigations into potential securities law violations.  The Vaughn index and supporting declaration detail how the work product doctrine applies to each withheld document.  Specifically, the case opening reports are internal reports that contain recommendations to open and manage the SEC investigations.  (Hall Decl. ¶¶ 5-6.)  The reports identify possible securities law violations, potential legal and factual issues, proposed areas of investigatory focus, and mental impressions regarding the issues and conduct to be investigated.  (Id. ¶¶ 7-8.)  The case closing reports are internal reports that contain recommendations to close SEC investigations.  (Id. ¶¶ 10-11.)  The reports include legal analyses, mental impressions, and legal conclusions regarding the

investigation.  (<u>Id.</u> ¶ 11.)   The matter-under-inquiry summaries are internal reports and forms that SEC supervisors use to manage cases.  (<u>Id.</u> ¶¶ 12, 21.)  The summaries contain information relevant to closing an investigation and identify possible securities law violations.  (<u>Id.</u> ¶¶ 13, 15, 22.)  The investigation summaries are internal reports that SEC supervisors use to manage cases.  (<u>Id.</u> ¶ 17.)  The summaries contain information that SEC attorneys prepared, including identification of possible securities law violations and recommendations on closing specific investigations.  (<u>Id.</u> ¶ 18.)  The access reports include formal access requests used by regulatory and law enforcement agencies that need non-public information obtained from another agency's investigation.  (<u>Id.</u> ¶ 24.)  The reports contain inter-agency law enforcement communications regarding the investigations, including insight into the individuals and entities that were examined or investigated.  (<u>Id.</u> ¶¶ 25, 28-29, 32-33.)  The reports also contain information that SEC attorneys considered when determining whether to grant the inter-agency access.  (<u>Id.</u> ¶¶ 27, 31.)  The internal memoranda contain attorney recommendations to the SEC, identify potential securities law violations, and provide legal advice on whether the SEC should take action.  (<u>Id.</u> ¶ 35.)  The attorney research and notes reveal SEC attorneys' mental impressions regarding interviews and examinations conducted during an investigation, as well as legal research relating to the investigation.  (Davis Decl. ¶¶ 4-10.)

SEC attorneys prepared these documents in the course of active investigations focusing on specific actions and possible securities law violations.  The documents also contain reports and recommendations with respect to the status of an ongoing investigation.  As such, the documents were prepared in anticipation of litigation and

qualify as attorney work product.  The SEC properly relied on Exemption 5 to withhold the records.

   c.  Deliberative Process Privilege

  The SEC relies on the deliberative process privilege to withhold case opening reports, case closing recommendations, matter-under-inquiry summaries, investigation summaries, access reports, internal memoranda, public complaint reports, and three miscellaneous documents.

  "The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998) (citation omitted).  Thus, an agency may withhold an inter- or intra-agency memorandum that is both pre-decisional and deliberative. Id.  A pre-decisional document is one that assists the decision-making process and contains personal opinions rather than agency policy.  Id.  A document is deliberative if its disclosure would discourage candid discussion in agency decision making.  Id.

  The case opening reports contain recommendations to open specific investigations, as well as the bases for the recommendations.  (Hall Decl. ¶¶ 5-8.)  The case closing reports contain recommendations and reasons to close the investigations.  (Id. ¶¶ 10-11.)  Similarly, the matter-under-inquiry summaries and investigation summaries contain information and recommendations relating the closing of specific investigations.  (Id. ¶¶ 12-13, 15, 17-18, 21-22.)  The access reports contain analyses and recommendations

on whether the SEC should grant inter-agency access to investigatory documents.  (<u>Id.</u> ¶ 27.)   The internal memoranda contain legal advice and recommendations regarding what action the SEC should take.  (<u>Id.</u> ¶¶ 30-31, 34-35.)  The public complaint reports contain information used to determine whether the SEC should investigate a particular entity.  (<u>Id.</u> ¶¶ 37-41.)  The miscellaneous documents include an internal e-mail exchange regarding outstanding FOIA concerns in four SEC investigations, an internal report used to manage SEC investigations, and an internal e-mail regarding a potential conflict of interest in a particular investigation and identifying several issues in the investigation. (<u>Id.</u> ¶¶ 42-44.)

The <u>Vaughn</u> index and supporting declaration establish that each document contains pre-decisional and deliberative information.   The declaration describes documents that are prime examples of the deliberative process, as they include personal impressions as to how the investigation should proceed.  Premature disclosure of those recommendations or comments "would discourage free ranging criticism and consideration of alternatives within an agency and would not be in the public interest." <u>Shorr</u>, 147 F.3d at 710.   The deliberative privilege process applies to the documents.

Gavin criticizes the SEC for its apparently inconsistent responses to his requests and surmises that the SEC could redact information and release the segregable portion of the documents.   He suggests that the court conduct an <u>in camera</u> review to confirm whether all information falls within Exemption 5.  An <u>in camera</u> review is unnecessary. The SEC provides a reasonable explanation for the manner in which it released

information.  (Aug. 1, 2007 Winter Decl. ¶¶ 3-4.) Moreover, the <u>Vaughn</u> index and supporting declarations provide detailed descriptions of the withheld documents, and explain how Exemption 5 applies to each document.  Specifically, the Assistant Chief Counsel in the Division of Enforcement for the SEC avers that the documents "consist entirely of the types of information" covered by Exemption 5, indicating that no segregable information exists.  (Hall Decl. ¶ 3.)  The index and affidavits describe the documents and withholding justifications in sufficient detail to demonstrate that Exemption 5 applies.  <u>See</u> <u>Mace v. EEOC</u>, 197 F.3d 329, 330 (8th Cir. 1999) (courts may rely on affidavits to determine whether Exemption 5 applied); <u>see also</u> <u>Boyd v. DOJ</u>, 475 F.3d 381, 391 (D.C. Cir. 2007) (district did not abuse its discretion by failing to conduct <u>in camera</u> review of withheld documents when the agency provided sufficiently detailed affidavits and the requestor presented no evidence of bad faith).  The SEC has established proper reliance on Exemption 5 to withhold these documents.

  4. <u>Exemption 7(C)</u>

  The SEC relies on Exemption 7(C) to redact personal information regarding SEC staff and third parties, including the individuals' names, contact information, and account numbers.  The SEC contends that releasing the information "would potentially subject staff and third parties to harassment, embarrassment, and/or unnecessary public scrutiny" and that the information provides "no insight into the SEC's conduct or discharge of its responsibilities."  (June 4, 2007 Winter Decl. ¶ 4.)

Exemption 7(C) allows an agency to withhold information compiled "for law enforcement purposes" if that information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether release of particular information is an "unwarranted" invasion of privacy, the Court must balance the compromised privacy interests against the public interest in releasing the information requested. Schrecker v. DOJ, 254 F.3d 162, 166 (D.C. Cir. 2001) (citing DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 109 (1989)). Where a legitimate privacy interest is implicated, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." Sussman, 2007 WL 2176117, at *6 (citations omitted).

Exemption 7(C) authorizes nondisclosure of staff names, as well as information in law enforcement investigation files that identify third parties. See Kuehnert v. FBI, 620 F.2d 662, 665-66 (8th Cir. 1980); see also Fitzgibbon v. CIA, 911 F.2d 755, 767-68 (D.C. Cir. 1990) (persons involved in law enforcement investigations "even if they are not the subject of the investigation—have a substantial interest in seeing that their participation remains secret") (internal quotations and citations omitted); Sussman, 2007 WL 2176117, at *6 ("Names of private individuals are thus generally exempt from disclosure except, for example, where they are required to confirm or refute allegations of improper government activity.") (citations omitted). The SEC has established sufficient privacy interests to warrant nondisclosure.

Moreover, releasing the personal information would not advance the fundamental purpose of FOIA "to open agency action to the light of public scrutiny." <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 772 (citation omitted).   "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." <u>Id.</u> at 773.   In this case, the SEC released the documents and redacted only personal information.  The disclosure of the personal information would neither allow the public to know "what their government is up to" nor enlighten the public on the conduct, scope, or purpose of the SEC investigations. <u>Id.</u>

Gavin contends that the SEC waived reliance on Exemption 7(C) by submitting declarations of individuals involved in the investigations and thereby disclosing their identities.  However, the prior, public disclosure of the individuals' names does not waive Exemption 7(C) applicability.  <u>Id.</u> at 762-63 (individual's privacy interest was not diminished even though some information in rap sheets was previously available to the public); <u>Fiduccia v. DOJ</u>, 185 F.3d 1035, 1046-47 (9th Cir. 1999) (prior publicity regarding law enforcement search of individual's residence and public availability of search documents did not preclude assertion of Exemption 7(C)); <u>Kiraly v. FBI</u>, 728 F.2d 273, 279-80 (6th Cir. 1984) (individual did not waive privacy interest in law enforcement investigation records by testifying at trial relating to the investigation).  Similarly, it is inconsequential that Gavin or the public could deduce the identities of staff members and

third parties whose name and personal information have been redacted.  See Shores v. FBI, 185 F. Supp. 2d 77, 83 (D. D.C. 2002) (where requestor may deduce individual's identity through other means or where their identities already have been disclosed, privacy interests are not diminished).

Because reasonable privacy interests outweigh any public interest in the personal information's disclosure, the SEC properly redacted the information under Exemption 7(C).

### 5.   Exemption 8

The SEC relies on Exemption 8 to withhold documents relating to investigation of Charles Schwab Corporation and Nucor Corporation.  Exemption 8 covers information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C. § 552(b)(8).   The purpose underlying Exemption 8 is to ensure financial institutions' security.  Consumers Union of United States, Inc. v. Heimann, 589 F.2d 531, 534 (D.C. Cir. 1978).  Specifically, Congress enacted Exemption 8 to address "concern that the disclosure of examination, operation and condition reports containing frank evaluations of investigated banks might undermine public confidence and cause unwarranted runs on banks."  Id.  Congress also enacted Exemption 8 to promote communication between banks and regulating agencies.  Id.  Thus, the broad scope of Exemption 8 provides "absolute protection regardless of the circumstances

underlying the regulatory agency's receipt or preparation of examination, operating or condition reports." Gregory v. FDIC, 631 F.2d 896, 898 (D.C. Cir. 1980).

Gavin challenges the withholding of three documents concerning the investigation of Charles Schwab Corporation.  He notes that the documents originated from federal and state banking regulators and contends that those regulators must determine whether the documents are exempt and provide a declaration justifying the nondisclosure.[16]  The case law on which he relies does not support that requirement.  Rather, Paisley v. Central Intelligence Agency, 712 F.2d 686, 691 (D.C. Cir. 1983) and Williams v. Federal Bureau of Investigation, No. 92-5176, 1993 WL  157679, at *1 (D.C. Cir. May 7, 1993) hold that an agency that receives a document from another agency may not refuse to process a FOIA request on the ground that the document originated elsewhere and may not simply refer the request to the originating agency.  Instead, the receiving agency must present a justification for withholding the document.

Gavin also submits that the SEC has not segregated and released factual information contained within the documents.  "Purely factual information does not fall within Exemption 8."  Marriott Employees' Fed. Credit Union v. Nat'l Credit Union Admin., No. 96-478, 1996 WL 33497625, at *5 (E.D. Va. Dec. 24, 1996) (citing In re

---

[16] Gavin identifies the documents as Schwab Index Document Nos. 2, 3, and 7.  However, Document 7 is another agency's request for access to SEC investigative files. (June 4, 2007 Winter Decl. Ex. A.; Hall Decl. ¶ 25.)  Documents 1 and 18 are SEC requests for access to other agencies' investigation files. (Hall Decl. ¶ 25.)  Documents 2 and 17 are letters from the other agencies notifying the SEC of decisions regarding the SEC requests.  (Id. ¶ 28.)

<u>Subpoena Served upon Comptroller of Currency & the Sec'y of the Bd. of Governors of</u>

<u>the Fed. Reserve Sys.</u>, 967 F.2d 630, 634 (D.C. Cir. 1992)).

> However, facts cannot be considered in isolation. They must be considered with respect to the overall context of the documents in which they are contained. Otherwise, the "purely factual information" exception would swallow the entire exemption in piecemeal fashion. In considering the factual information withheld . . ., the Court [must be] mindful of a key purpose underlying Exemption 8, <u>i.e.</u>, fostering communication between banks and regulating agencies.

<u>Id.</u>

In this case, the Assistant Chief Counsel in the Division of Enforcement for the SEC specifically avers that Exemption 8 covers the documents in their entirety.  (Hall Decl. ¶ 3.)  Moreover, to compel the SEC to release the information would "undermine the spirit of cooperation between banks and regulating agencies that Exemption 8 attempts to foster."  <u>Marriott Employees' Fed. Credit Union</u>, 1996 WL 33497625, at *5. The documents are access requests to the bank regulator investigation files regarding Charles Schwab Corporation, responses to the access requests, and letters from the Federal Reserve Bank to the SEC regarding the investigation.  The documents were produced in connection with an ongoing SEC examination or investigation and provide insight into the information and entities the SEC attorneys were examining and investigating.  (Hall Decl. ¶ 25; Farrell Decl. ¶¶ 4-5.)  As such, the documents fall within the scope of Exemption 8.

The record establishes that the SEC has properly relied on various exemptions to withhold records and has identified all reasonably segregable, non-exempt information.

Because the SEC has established it fully discharged its FOIA duty as it relates to the remanded requests, the Court grants summary judgment on Counts 2-3, 5-6, 8-10, 12, 14-21, and 24-25 of the Complaint.

### F.   Attorneys' Fees under FOIA

Gavin submits that the Court should award him attorneys' fees incurred in litigating this action.  A court may award "reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).  The purpose of § 552(a)(4)(E) is "to remove the often insurmountable financial barriers the average citizen face[s] when attempting to force governmental compliance with FOIA, not to provide an award to any plaintiff who successfully force[s] the government to disclose the requested information."  Ginter v. IRS, 648 F.2d 469, 470 (8th Cir. 1981) (citations omitted).

Nonetheless, courts within the Eighth Circuit do not require the claimant to receive a favorable judgment in order to "substantially prevail."  Id.; Miller v. U.S. Dep't of State, 779 F.2d 1378, 1389 (8th Cir. 1985); but see Judicial Watch, Inc. v. U.S. Dep't of Commerce, 470 F.3d 363, 368-69 (D.C. Cir. 2006) ("to 'substantially prevail,' a party must obtain court-ordered relief on the merits of its FOIA claim").  However, if the plaintiff does not receive a favorable judgment, then he must establish two elements: (1) that the prosecution of the action could reasonably be regarded as necessary to obtain the information, and (2) that the litigation caused the release of the information.  Miller, 779 F.2d at 1389 (citing Ginter, 648 F.2d at 471).

Despite the Court denying his summary judgment motions, Gavin substantially prevailed in this action because his vigorous prosecution of the action compelled the SEC either to produce the requested records or apply proper FOIA exemptions.  See id.  The SEC contends that it released most documents because it closed the investigations in the normal course of business—not because Gavin sued.  The Court disagrees.  When Gavin commenced this action, he had received no information on any request at issue.  Only after the parties filed three rounds of summary judgment motions did the Court find that the SEC finally sustained its burden of establishing that exemptions applied.  During that time, the SEC withdrew its use of the Glomar response, remanded several requests for reprocessing, relied on several exemptions not previously asserted, and finally conducted a document-by-document review.  Furthermore, the SEC ultimately was forced to submit a Vaughn index and prove that its reliance on the newly asserted exemptions was proper.  Gavin's vigorous and persistent prosecution of the action—not the mere passage of time—forced the SEC to release the documents and comply with FOIA.

Nonetheless, eligibility for fees does not necessarily mean that a party is entitled to attorneys' fees under FOIA.  Id.  Rather, the Court must consider several factors to determine whether the prevailing party is entitled to fees: "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which he seeks; and (4) whether the government's withholding of the records had a reasonable basis in law."  Id.

The first factor weighs against a fee award.  Because the purpose of FOIA is to promote public disclosure of government records and information, the first factor is

significant.  Id.  Of course, "the successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large the benefits assumed to flow from the public disclosure of government information."  Aviation Data Serv. v. FAA, 687 F.2d 1319, 1323 (10th Cir. 1982) (internal quotations and citation omitted).  Thus, when weighing this factor, courts "take into account the degree of dissemination and likely public impact that might be expected from a particular disclosure" so that disclosure will "add to the fund of information that citizens may use in making vital political choices." Id. (citation omitted).  Gavin uses the information to advise subscribers on investment options.  He does not seek the information to disseminate to the general public; he seeks the information to sell it to his subscribers.   Although the subscribers may benefit from making more informed investment decisions,[17] the public benefit is minimal and incidental.

The second and third factors also weigh against a fee award.  "To the extent that the requester seeks government information primarily for private gain, his FOIA action is a matter of his own concern and expense and not of advocacy to serve a public interest." Id. at 1390; see also Tax Analysts v. DOJ, 965 F.2d 1092, 1095 (D.C. Cir. 1992) ("when a litigant seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate").  As a commercial requestor, Gavin seeks the information for a newsletter that he publishes and sells to subscribers.  His

---

[17]  The Court further notes that the subscribers seek this information for commercial gain, not because they want to know how the SEC operates.

benefit is purely commercial and his primary interest is to advance a purely personal goal.

Finally, the fourth factor is neutral.  This factor is "intended to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  Tax Analysts, 965 F.2d at 1097 (internal quotations and citation omitted).  The SEC steadfastly refused to conduct a document-by-document review despite clear orders from the Court.  However, it ultimately proved that nondisclosure of much of the requested information was proper.  Weighing all these factors, the Court finds that Gavin has failed to show that he is entitled to attorneys' fees under § 552(a)(4)(E).

## G.      Motion for Sanctions and Attorneys' Fees

Gavin also seeks sanctions and attorneys' fees against the SEC for failure to comply with court orders, repeatedly asking for relief previously denied by the Court, and other purportedly nefarious acts.

The Court previously chastised the SEC for how it proceeded in this case. Specifically, the Court recognized that the SEC "has continually and deliberately stalled in fulfilling its obligations to conduct a document-by-document review of material it seeks to withhold pursuant to Exemption 7(A).  In doing so, the SEC has attempted to play by its own rules and disregard the law."  (June 20, 2006 Order.)  The Court further stated:

> The Court adamantly disapproves of the manner in which the SEC has conducted itself as it relates to Gavin's requests.  The SEC has shirked its

responsibility by brazenly refusing to conduct a document-by-document review—despite a direct order from the Court.  Moreover, it raises the cost issue as an after-the-fact argument to circumvent the requirements of FOIA. The SEC should have completed the document-by-document reviews from the outset before ever relying on Exemption 7(A).   Instead, it arbitrarily relied on the Exemption without first determining whether the Exemption truly applies.

(Oct. 16, 2006 Order at 12-13.)

Gavin has not specifically identified a rule or statute on which he bases his Motion for Sanctions.  He cannot rely on FOIA, as FOIA does not authorize sanctions as a remedy for failure to disclose documents.  O'Meara v. IRS, 142 F.3d 440 (7th Cir. 1998) (citations omitted) (table opinion).  Eltayib v. U.S. Coast Guard, 53 Fed. Appx. 127 (table opinion) (D.C. Cir. 2002) (affirming denial of motion for sanctions because FOIA does not authorize the collection of damages).   Nor can he rely on Federal Rule of Civil Procedure 11, which authorizes the Court to impose sanctions on a party who files motions for an improper purpose such as unnecessary delay or needless increase in litigation costs, because he did not comply with the safe harbor provisions of Rule 11(c). Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1029 (8th Cir. 2003).  Finally, he has not moved to hold the SEC in contempt of a court order.  See, e.g., Landmark Legal Found. v. EPA, 272 F. Supp. 2d 70, 85-87 (D. D.C. 2003) (holding the EPA in contempt and ordering it to pay sanctions equaling legal fees and costs the plaintiff incurred because of "contumacious conduct").

Courts have imposed sanctions under 28 U.S.C. § 1927 against a government agency that shirked its FOIA responsibilities.  See, e.g., Pac. Fisheries, Inc. v. IRS, No. 04-2436, 2006 WL 1635706, at *5 (W.D. Wash. Jun. 1, 2006).

Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   The imposition of sanctions under § 1927 is discretionary.   Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1011 (8th Cir. 2006).   Before awarding sanctions under § 1927, however, the Court must conclude that counsel intentionally or recklessly disregarded their duties to the Court. Id.

The Court has expressed great frustration with the SEC's litigation tactics in this action.  As the Court has previously identified, the most glaring example is the filing of several motions to challenge the clear order that the SEC conduct a document-by-document review of records withheld in the ongoing investigations.[18]  Clearly the SEC should have raised the review cost issue early on, since the order that Gavin pay the review costs precipitated the narrowing of the requests and ultimately the document-by-document review.   However, the delay in raising the issue was neither clearly unreasonable nor vexatious.  Nor was any other conduct for which Gavin complains.  Thus, the Court will not impose sanctions.

**CONCLUSION**

The SEC has established that it properly withheld information pursuant to several exemptions under FOIA.   It also has identified reasonably segregable, non-exempt

---

[18] The Court also notes that Gavin has been steadfast in his position that the declarations filed by the SEC were inadequate, despite the Court clearly finding that the declarations were sufficient.

information.   Although this litigation compelled the SEC to satisfy FOIA requirements, Gavin is not entitled to attorneys' fees.  Finally, although the Court disapproves of the SEC's litigation tactics, they were not so outrageous as to warrant sanctions. Accordingly, **IT IS HEREBY ORDERED** that:

1.      Gavin's Second Renewed Motion for Summary Judgment and Attorneys' Fees (Docket No. 132) is **DENIED**;

2.      Gavin's Renewed Motion for Sanctions and Attorneys' Fees (Docket No. 135) is **DENIED**; and

3.      The SEC's Second Renewed Motion for Summary Judgment (Docket No. 147) is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  August 23, 2007

s/Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge